[No. 37750.   Department One.   January 20, 1966.]

CENTURY METAL WORKS, INC., *Appellant*, v. NATIONAL LEAD COMPANY, *Respondent.*\*

*Michael R. Alfieri* (of *Moschetto, Alfieri & Driano*), for appellant.

*William J. Powers* (of *Whitmore, Vinton, Powers & Manion*), for respondent.

OTT, J.—This appeal involves an alleged breach of warranty of fitness of National Lead Company's paint product designated as Dutch Boy 63D13.

Century Metal Works, Inc., had a subcontract to paint approximately 600 convector covers according to specifications furnished by the state of Washington, and used the paint recommended by National Lead Company. When 300 of the painted convector covers were rejected by the state for the reason that the paint did not adhere properly to the covers, Century Metal Works refinished the 300 covers with the paint recommended by National Lead Company, and,

\*Reported in 410 P.2d 4.

after painting the remaining 300 convector covers, commenced this action against National Lead Company, seeking damages in the sum of $5,390.83 for breach of implied warranty of fitness.

National Lead Company denied that it had breached its warranty of fitness, and alleged, *inter alia*, that the specifications for the application of the paint to the convector covers required that the covers be cleaned of all foreign materials; that the covers were not so cleaned, and that, after the convector covers were cleaned in conformity with the specifications, the paint it had recommended was used, did adhere, and the painted convector covers were accepted by the state.

The cause was tried to the court, which entered findings of fact as follows:

That the paint product of the defendant, to-wit: Dutch Boy 63D13, gold simulated leather, was a fit and proper product to be used on the metal material known and described as convector covers. Finding of Fact No. 1.

That it was the responsibility of plaintiff corporation to properly prepare the convector covers prior to the application to said convector covers of defendant's paint product above referred to. Finding of Fact No. 2.

That plaintiff corporation, through its employees, did not properly prepare the convector covers for the application of defendant's paint product, and as a consequence thereof the paint failed to adhere. Finding of Fact No. 3.

From a judgment dismissing plaintiff's cause of action, predicated upon its failure to prove a breach of warranty, the plaintiff has appealed, assigning error to each of the quoted findings of fact, and to the court's conclusions of law and judgment.

Appellant Century Metal Works relies on RCW 63.04-.160(1) which provides:

Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular

purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

The statutory definition of warranty entails the following elements: (1) The buyer must make known to the seller the purpose for which the goods are required, and (2) the buyer must rely upon the seller's skill or judgment that the goods are reasonably fit for the buyer's purpose.

Century Metal Works made known to National Lead Company that it would prepare the metal convector covers for painting in the following manner:

B. PREPARATION

Remove loose mill scale, flake rust, oil, weld spatter, other foreign material.

Use suitable power tools; give particular attention to welds.

Predicated upon the assumption that Century Metal Works would properly prepare the metal covers to receive the paint, National Lead Company warranted that its paint would adhere to the surface of the metal, if it was cleaned in conformity with the quoted specification.

The trial court found that the foreign material had not been removed from the 300 rejected metal covers prior to the application of the paint, and that removal of the foreign material was the responsibility of Century Metal Works.

The evidence upon which the court predicated its finding that the foreign substance had not been removed from the rejected convector covers prior to painting was furnished by two experts who testified, *inter alia*, that an oily substance and other foreign material had not been removed prior to painting, which foreign material and oil the witnesses found by peeling paint from several of the rejected convector covers, and that this was the sole reason for the failure of the paint to adhere to the metal surface. The evidence further established that agents of National Lead Company had recommended to Century Metal Works, prior to its application of paint to the covers, that the removal

of foreign material from the recently manufactured metal covers should be done in a particular manner, or that the advice of a painting expert should be sought and followed, and that, instead, Century Metal Works followed the recommendations of other persons.

In this regard, the trial court stated in its oral opinion:

The defendant's [National Lead Company's] representative suggested that the Century people consult with an expert in the field of cleaning metals, and suggested a company that was an expert; but the Century Metal Works' superintendent, Mr. Rottman, chose to go to the Isaacson Iron Works because he felt his past association with them might give him better information on that.

He consulted with a galvanizing expert rather than a painting expert. He followed the suggestion of the man from Isaacson, and he then consulted with a chemical company as to carrying out the suggestion of Isaacson. He then took it upon himself to build facilities in order to use this caustic, and it was described how they used it and how they rinsed afterwards.

We now have conflicting evidence that when you use caustic you should rinse in a different way and more carefully than was described by the plaintiff's [Century Metal Works'] foreman.

The evidence did establish that the cleaning process employed by Century Metal Works did not remove foreign material. One expert testified:

I examined them after they had come out of their cleaning line and they had a heavy white powder on them which was very difficult to rub off with the dry cloth. However, after you did rub it off the metal had a smudge underneath it. It was not clean metal underneath the white powder.

The other expert testified to the failure of Century Metal Works to remove the foreign material from the metal covers as follows:

Q. And then you say you saw some slight oil on the strips, is that correct? A. There were particles on the back of the paint. Q. Particles? A. Right. You turn the paint chip over and there were particles on the back, a slight black or dust, or however you would want to describe it on the back of the chips. Q. But it wasn't

oil, then? A. Well, the surface felt oily to the touch on the metal. This is aside from the chip. Q. What you are saying is that there was oil on the metal and something black on the back part of the paint strip, is that right? A. Yes.

■ The evidence established that National Lead Company had warranted its product as reasonably fit for Century Metal Works' purpose, as that term is defined by RCW 63.04.160(1). The trial court's finding that the warranty of fitness had not been breached is a factual one, and its determination is sustained by the record. Where there is evidence to sustain the trial court's factual determination, it will not be disturbed on appeal. *Wells & Wade Hardware, Inc. v. Wenatchee*, 64 Wn.2d 103, 104, 390 P.2d 701 (1964), and cases cited.

■ Finally, Century Metal Works contends that the evidence established that National Lead Company's paint would adhere to the metal surface only if it was prepared by removing all foreign material and, in addition, etching the smooth surface of the metal. The burden of proof to establish this contention rested upon Century Metal Works. In this regard, the evidence of Century Metal Works established that, when the 300 convector covers were sandblasted to remove the paint which had not adequately adhered to the metal surface, the sandblasting resulted in a rough surface to which the paint adhered, and, likewise, that when a certain recommended cleaning solution was used to remove the foreign material from the surface of the remaining convector covers, an etched surface resulted from the chemicals in the cleaning solution, to which resulting surface paint would more readily adhere. This evidence established nothing more than that the paint would adhere to a clean rough surface.

The following testimony, in response to a hypothetical question by Century Metal Works, was that, if the metal was cleaned in accordance with the state's specifications, National Lead Company's paint would adhere:

Q. Let's take two pieces of 14 gauge sheet metal, say a foot square, and they both came out of the same batch

or the same sheet and you cut it, and then you take the preparations here and the specification, you remove any mill scale, if any is there, you take off any grease with a strong solvent, and in this case Socal, and you take care or brush off any rust that is there—I don't know if there are any other foreign objects— A. That's good enough. Q. —flake rust, oil, weld spatter or other foreign material, will that—will both of those paints [red lead and Dutch Boy 63D13] stick to those samples? A. Yes.

Century Metal Works, having the burden of proof, failed to produce sufficient evidence to convince the trial court that National Lead Company's paint would not adhere to a metal surface which had been prepared in accordance with the state's specifications. Therefore, Century Metal Works failed to establish a breach of the implied warranty of fitness.

For the reasons stated, the judgment is affirmed.

ROSELLINI, C. J., HILL, HAMILTON, and HALE, JJ., concur.